DECISION AND JUDGMENT ENTRY
Gary Huck appeals his sentence and designation as a sexual predator by the Washington County Court of Common Pleas. Huck asserts that the trial court's determination that he is a sexual predator is against the manifest weight of the evidence. Because we find that some competent, credible evidence supports the trial court's determination that Huck is a sexual predator, we disagree. Huck also asserts that the trial court erred in imposing consecutive sentences for two counts of sexual battery, a violation of R.C. 2907.03(A). Because we find that the trial court failed to articulate its reasons for imposing consecutive sentences, we agree. Accordingly, we affirm in part and reverse in part the judgment of the trial court and remand this case for the sole purpose of re-sentencing.
 I.
The Washington County Grand Jury indicted Huck for several counts of sexual battery, attempted sexual battery and attempted rape. These charges concerned incidents where Huck provided alcohol and cigarettes to a fourteen-year-old boy and a fifteen-year-old boy.[1] The boys alleged that after they became intoxicated or passed out from drinking alcohol, Huck would perform oral sex on them and force them to perform oral sex on him. The fifteen-year-old boy also alleged that on a trip to Cedar Point Huck attempted anal intercourse with him.
As a result of a plea bargain, Huck pled guilty to one count of sexual battery in violation of R.C. 2907.03(A)(2) (3) and one count of sexual battery in violation of R.C. 2907.03(A)(2). Each charge concerned a different victim. In exchange for Huck's guilty pleas, the state dropped the remaining charges, agreed not to prosecute Huck for the incident during the trip to Cedar Point, and agreed not to pursue any charges in municipal court.
After a pre-sentence investigation report was prepared, the trial court held a combined sexual offender classification and sentencing hearing. At the hearing, the state read a letter from the fourteen-year-old victim's mother. She explained that he does not trust people anymore. She felt that Huck took advantage of her son.
Mr. Huck testified that he bought alcohol for the victims because they came to his house and asked him to buy the alcohol. He claimed responsibility for the sexual abuse and expressed remorse and regret for it. He explained that he had been consuming alcohol when he sexually abused the boys. He denied ever threatening or coercing the boys. He testified that he had lived in Washington County his entire life and had never been unemployed until he was arrested for these charges. He testified that he began counseling for his alcohol problems and the sexual abuse. He agreed that after the first time he had sexual contact with the boys he knew that if he gave them alcohol again, the sexual contact was likely to happen again. He admitted to having sexual contact with each boy three times.
Dr. Haueter, Huck's psychologist, testified that Huck became his client in August 2000. He testified that he concluded from his evaluation of Huck that Huck had an alcohol problem, but did not meet the criteria of a pedophile or a psychotic. Haueter explained that Huck's feelings of social inadequacies led to the sexual abuse. He also testified that the evaluation indicated that Huck suffered from Post-Traumatic Stress Disorder as a result of being sexually abused. Haueter testified that Huck had been attending counseling sessions with him since the evaluation. He explained that Huck is amenable to treatment and counseling on the alcohol and sex abuse issues. Haueter opined that Huck, "by completing treatment, and being abstinent from alcohol, will not commit [sexually oriented offenses] in the future." Haueter recommended that Huck's treatment include group process treatment and that Huck attend a recovery program such as Alcoholics Anonymous.
The court first determined Huck's sexual offender classification. The trial court considered the following factors: (1) Huck was forty years old at the time of the offense; (2) Huck had no prior criminal record; (3) Huck's victims were fourteen and fifteen years old; (4) Huck had multiple victims; (5) Huck used alcohol to impair his victims; (6) Huck had no mental disease, illness, or disability; (7) the sexual activity was not cruel; (8) the sex offenses were part of a demonstrated pattern of abuse; and (9) there were no threats of cruelty. The trial court also considered the testimony of Huck's psychologist. The trial court weighed the statutory factors and found that the state had proven by clear and convincing evidence that Huck was a sexual predator.
The trial court then determined Huck's sentence. The trial court found that (1) the offense was made worse by the age of the victims; (2) Huck's relationships with the victims facilitated the offense; and (3) Huck is more likely to re-offend because there is a pattern of drug or alcohol abuse related to the offense; (4) consecutive sentences are necessary to fulfill the purposes and principles of sentencing and are not disproportionate to the seriousness of Huck's conduct and the danger he poses to the public. The trial court then sentenced Huck to four years on each count of sexual battery, to be served consecutively.
In its sentencing entry, the trial court noted that it imposed consecutive sentences because: (1) consecutive sentences are necessary to protect the public and to punish Huck; (2) consecutive sentences are not disproportionate to the seriousness of Huck's conduct; and (3) the harm caused by the multiple offenses was so great that no single prison term adequately reflects the seriousness of Huck's conduct.
Huck appeals and asserts the following assignments of error:
 I. The finding by the trial court that appellant is a sexual predator is against the manifest weight of the evidence.
 II. The trial court's sentence of eight years is contrary to law.
 II.
In his first assignment of error, Huck argues that the trial court's designation of him as a sexual predator is against the manifest weight of the evidence. He asserts that the state did not prove by clear and convincing evidence that he is likely to commit a sexually oriented offense in the future. Huck relies on the testimony of his psychologist who testified that if Huck continued his treatment that the pattern of sex abuse would not continue. Additionally, Huck relies upon the fact that he is forty years old and has never committed a sexually oriented offense before.
A sexual predator is defined as a person who has been convicted of or has pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01(E); State v. Eppinger (2001), 91 Ohio St.3d 157, 163. Sexual offender classification proceedings under R.C. 2950.09 are civil in nature and require the prosecution to prove by clear and convincing evidence that an offender is a sexual predator. R.C. 2950.09(B);Eppinger; State v. Cook (1998), 83 Ohio St.3d 404, 408.
We will not reverse a trial court's determination that an offender is a sexual predator if some competent, credible evidence supports it. Statev. Morris (July 18, 2000), Washington App. No. 99CA47, unreported; Statev. Daugherty (Nov. 12, 1999), Washington App. No. 99CA09, unreported;State v. Meade (Apr. 30, 1999), Scioto App. No. 98CA2566, unreported. This deferential standard of review applies even though the state must prove the offender is a sexual predator by clear and convincing evidence.Meade; see, also, State v. Hannold (June 28, 1999), Washington App. No. 98CA40, unreported.
In order to determine if the offender is likely to engage in future sexually oriented offenses, the trial court must consider all relevant factors, including, but not limited to, those listed in R.C. 2950.09(B)(2). Those factors are:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
While the statute does not require a trial court to make explicit findings regarding relevant factors, see Hannold, supra; State v. Smith
(July 20, 1998), Hocking App. No. 97CA10, unreported, in a model sexual offender classification hearing, the trial court considers all statutory factors and discusses on the record "the particular evidence and factors upon which it relies in making its determination * * *." Eppinger at 166, citing State v. Thompson (Apr. 1, 1999), Cuyahoga App. No. 73492, unreported.[2]
A trier of fact may look at past behavior in determining future propensity because past behavior is often an important indicator for future propensity. State v. Hardie (Jan. 4, 2001), Washington App. No 00CA14, unreported; State v. Bartis (Dec. 9, 1997), Franklin App. No. 97APA05-600, unreported, citing Kansas v. Hendricks (1997), 521 U.S. 346
and Heller v. Doe (1993), 509 U.S. 312, affirmed (1998), 84 Ohio St.3d 9. For that very reason a court may designate a first time offender as a sexual predator. See, e.g., Meade; State v. Watts (May 29, 1998), Montgomery App. No. 16738, unreported.
A court is under no obligation to "tally up" the R.C. 2950.09(B)(2) factors in any particular fashion. State v. Clutter (Jan. 28, 2000), Washington App. No. 99CA19, unreported; State v. Mollohan (Aug. 19, 1999), Washington App. No. 98CA13, unreported. A court may classify an offender as a "sexual predator" even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually oriented offense. Id. A court may properly designate an offender as a sexual predator even in the absence of expert testimony from the state, State v. Meade (Apr. 30, 1999), Scioto App. No. 98CA2566, unreported, or even if a psychologist concludes that the state presented insufficient evidence to support a determination that the defendant is a sexual predator. State v. Ayers (Sept. 15, 1998), Franklin App. No. 97APA11-1556, unreported.
Huck pled guilty to gross sexual imposition, a violation of R.C.2907.05(A)(2) (3). A violation of R.C. 2907.05 is a sexually oriented offense. R.C. 2950.01(D)(1). Because Huck pled guilty to a sexually oriented offense, he meets the first prong of the definition of a sexual predator. R.C. 2950.01(E).
Some competent, credible evidence supports the trial court's finding that Huck is likely to engage in the future in one or more sexually oriented offenses. Huck victimized multiple victims (two teenage boys) with whom he had a special relationship. He used alcohol to impair his victims by rendering them unconscious thereby preventing resistance and used alcohol to entice the victims to his home. Huck's sexual abuse of the boys was part of a pattern of abuse. Huck admitted to having a substance abuse problem. Thus, we find that the trial court's classification of Huck as a sexual predator is not against the manifest weight of the evidence. Accordingly, we overrule Huck's first assignment of error.
 II.
In his second assignment of error, Huck argues that the trial court erred by imposing more than the minimum prison sentence when he had no criminal record and that the trial court erred in imposing consecutive sentences. We consider each argument in turn.
An offender may appeal as a matter of right a sentence that is contrary to law. R.C. 2953.08(A)(4). If a trial court fails to make the findings required by law in order to impose a sentence, the sentence is contrary to law. State v. Jones (2001), 93 Ohio St.3d 391, 399. We must not reverse a felony sentence unless we find, by clear and convincing evidence, that the sentence is unsupported by the record, or contrary to law. R.C. 2953.08(G)(1)(a) and (d).
 A.
We first consider Huck's argument that the trial court erroneously imposed more than the minimum sentence upon him because he is a first time offender.
"Minimum sentences are favored for first-time imprisonment." State v.Edmonson (1999), 86 Ohio St.3d 324, 325. "R.C. 2929.14(B) requires a trial court to impose a minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender." Id. See, also, Jones at 398. The trial court is not required to "give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." Edmonson at 326 (emphasis in original).[3]
Here, the trial court found that "imposing the minimum sentence would not be adequate to protect the public nor to punish the offender." (Sentencing hearing page 87). Therefore, the trial court did not err in imposing more than the minimum sentence upon Huck as a first-time offender.
 B.
Huck also asserts that the trial court erred in imposing consecutive sentences because it failed to make the findings required by R.C.2929.14(E) and failed to articulate its reasons for imposing consecutive sentences.
Under the statutory framework of R.C. 2929.14(E)(4), the sentencing court may not impose consecutive sentences unless it finds three statutory factors applicable. Jones; State v. Moore (2001)142 Ohio App.3d 593, 597. First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(E)(4). Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.Id. Third, the court must find that at least one of these three factors applies to the offender:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to * * * [R.C.] 2929.16, 2929.17, or 2929.18 * * *, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.14(E)(4)(a)-(c).
In Edmonson, the Ohio Supreme court analyzed the verb "finds" within the context of R.C. 2929.14(B), which describes what a sentencing court must find before sentencing a first-time offender to a prison term longer than the minimum term authorized by statute. In our view, the word "finds" carries the same meaning in R.C. 2929.14(B) as it does in R.C.2929.14(E)(4). Moore at 598.
Here, the trial court complied with R.C. 2929.14(E)(4) by finding that consecutive sentences are necessary to protect the public from future crime and to punish Huck, consecutive sentences are not disproportionate to the seriousness of the crime and the danger Huck poses to the public, and the harm caused by the multiple offenses was so great that no single prison term adequately reflects the seriousness of Huck's conduct.
However, before imposing consecutive sentences, the trial court must specify on the record that the reasons allowed by R.C. 2929.14(E)(4) justify consecutive rather than concurrent terms. R.C. 2929.19(B)(2)(c);Moore; Edmonson; Brice.
Here, although the trial court made the required findings, the trial court did not set forth its reasons for imposing a consecutive sentence either at the sentencing hearing or in its sentencing entry. Therefore, the trial court did not comply with R.C. 2929.19(B)(2)(c). We find that the consecutive nature of Huck's sentence is contrary to law. Moore. Accordingly, we sustain Huck's second assignment of error in part.
 III.
In sum, we overrule Huck's first assignment of error and sustain his second assignment of error in part. Accordingly, we reverse the judgment of the trial court and remand this case to the trial court for the sole purpose of re-sentencing.
 JUDGMENT AFFIRMED IN PART AND JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED IN PART AND AFFIRMED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Harsha, J.: Concur in Judgment and Opinion.
[1] The cases concerning each victim were consolidated in the trial court.
[2] First, a record must be created for review. Eppinger at 166. Second, an expert may be required and the trial court should engage in the analysis as set forth in Eppinger if the defense requests a court-appointed expert. Id. Third, a trial court "should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination" regarding the factors.
[3] The Supreme Court determined in Edmonson that "the verb `finds' as used in [R.C. 2929.14(B)] means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Edmonson at 326.